UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ADRIAN SANTIAGO HERNANDEZ,

Plaintiff,

v.

Case No. 25-cv-1950-pp

BARRY T. DAUGHTRY, *et al.*,

Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Adrian Santiago Hernandez, who is confined at Dodge Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.     Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On December 23, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $10.54. Dkt. No. 5. The court received that fee on January 12, 2026. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

<u>Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. <u>D.S. v. E. Porter Cnty. Sch. Corp.</u>, 799 F.3d 793, 798 (7th Cir. 2015) (citing <u>Buchanan–Moore v. County of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. <u>Cesal</u>, 851 F.3d at 720 (citing <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)).

B.      The Plaintiff's Allegations

The plaintiff was incarcerated at Kettle Moraine Correctional Institution during the events described in the complaint. Dkt. No. 1 at 2. He sues Barry Daughtry, Stephen D. Randal, CO Chase, Traci Kruse, Randal Geveau, J. Lewis, Srg Meinberg, Joy Tassler, Lauren E. Schneider, John J. Glinieki, Nicole Schwaller and Jennifer Bresser. <u>Id.</u> at 1.

The plaintiff alleges that on September 2, 2024, he asked to be seen by the health services unit (HSU) for pain in his groin area. <u>Id.</u> at ¶2. Nurse Randal allegedly saw the plaintiff and told him to continue working out because he had lost weight. <u>Id.</u> at ¶3. The plaintiff states that later his pain

worsened and on September 23, 2024, he asked to be seen again. Id. at ¶4. On October 29, 2024, the plaintiff had an appointment with Dr. Daughtry who told him that he probably had a hernia. Id. at ¶5. Two days later, on October 31, the plaintiff allegedly had an ultrasound which showed that he had two hernias and that he "should never have been told to continue working out." Id. at ¶6.

The plaintiff alleges that while he was waiting for surgery, he complained about pain and the hernia belt not fitting properly, but he never received the proper hernia belt or pain medication. Id. at ¶7. On February 6, 2025, Dr. Kruse allegedly told the plaintiff that he needed surgery. Id. at ¶8. The plaintiff states that he didn't have surgery until May 7, 2025, and he didn't receive proper pain medication while he was waiting for surgery. Id.  After surgery, Kruse allegedly said that the plaintiff should wear something tight. Id. at ¶9. CO Chase allegedly said that underwear would apply the necessary pressure. Id. The plaintiff states that Kruse failed to notify the institution at that time that the plaintiff should have a sports supporter or jockstrap. Id. at ¶10.

The plaintiff states that at a May 27, 2025 appointment with Kruse, Kruse requested that the institution supply compression shorts or a jock strap for scrotal support to help with the resolution of fluid in the inguinal canal. Id. at ¶11. The plaintiff states that two days later, Daughtry gave him a hernia belt, but not a jockstrap or scrotal support. Id. at ¶12.

The plaintiff alleges that on June 16, 2025, he requested a refill of pain medication, but that defendant Geveau denied the request. Id. at ¶13. Five days later, the plaintiff allegedly contacted the HSU and asked why he hadn't

4

received the jockstrap and why his pain medication hadn't been ordered. Id. at ¶14. That same day, Nurse Klein allegedly responded that the jockstrap was on order, and that the plaintiff could submit a refill slip for pain medication. Id. at ¶15.

The plaintiff alleges that on July 7, 2025, he tried to obtain Ibuprofen, but that Geveau denied the request. Id. at ¶16. He states that on July 29, 2025, eighty-five days after his surgery, he finally received the jockstrap. Id. at ¶17. He says that the jockstrap was too small and that defendant Schneider said that defendant Glinieki told her it was the only size they had. Id.

The plaintiff alleges that on September 7, 2025, he was seen in the HSU after complaining to Nurse Schwaller of swelling, pain and complications from surgery. Id. at ¶18. On September 26, 2025, he complained again and was seen by Schwaller who said that he had an urgent referral, but nothing was sent. Id. at ¶19. Schwaller allegedly said that she would talk to HSU Manager J. Lewis. Id. The plaintiff states that defendant Bresser delayed scheduling the appointment. Id.

The plaintiff alleges that on September 29, 2025, he was called to the laundry to bring the jockstrap to defendant Meinberg to cut and modify the waistband to fit. Id. at ¶20. He states that the following month, on October 17, 2025, he was given a different jockstrap after having been told they didn't have a bigger size. Id. at ¶21.

The plaintiff states that on November 7, 2025, he saw Dr. Erin Salter (not a defendant) at the Fond du Lac Saint Agnes Hospital for additional surgery

5

because of the unnecessary delay and mistakes in providing him proper medical care. Id. at ¶¶22-23.

The plaintiff seeks relief against the defendants for violating his constitutional rights based on the following actions: Nurse Randal told him to continue exercising; Dr. Daughtry was informed multiple times of the plaintiff's pain and did not give him effective pain medication, did not allow a different or proper hernia belt when it was needed and gave him a hernia belt instead of a jockstrap or scrotal support after his surgery; Officer Chase gave Dr. Kruse and the plaintiff false medical information; Kruse failed to pass medical information to Kettle Moraine's HSU; Geveau failed to dispense the plaintiff's medication; Schneider gave the plaintiff a jock strap that was too small and falsely told him that was the biggest size; Glinieki also said the jock strap was the largest size; Bresser delayed the schedule progress and times from the doctor referral; when the plaintiff wrote to Warden Joy Tassler and received a response stating "refer to chain of command," the plaintiff wrote to HSU Manager Lewis and received a response from Randal, and was sent to the laundry for modification of the jockstrap; Meinberg allowed the altering and modification of state property to make the plaintiff's jockstrap fit; and Schwaller talked to Meinberg to modify or alter the jockstrap. Id. at pages 6-7. For relief, the plaintiff seeks compensatory and punitive damages. Id. at 8-12.

C.     Analysis

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference

to the serious medical need of an incarcerated individual. <u>Cesal v. Moats</u>, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." <u>Id.</u> at 721 (quoting <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)).

An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Id.</u> (quoting <u>King v. Kramer</u>, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the incarcerated individual's health. <u>Id.</u> (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 836-38 (1994); <u>Greeno v. Daley</u>, 414 F.3d 645, 653 (7th Cir. 2005)).

The plaintiff has sufficiently alleged that he had a serious medical need. <u>See</u> <u>Wilson v. Wexford Health Sources, Inc.</u>, 932 F.3d 513, 521 (7th Cir. 2019) (quoting <u>Gonzalez v. Feinerman</u>, 663 F.3d 311, 314 (7th Cir. 2011) ("hernia can be an objectively serious medical problem")). The plaintiff may proceed on an Eighth Amendment claim against Dr. Daughtry for allegedly not prescribing the plaintiff effective pain medication or providing him with a proper hernia belt before the plaintiff had hernia surgery. The plaintiff also may proceed against Geveau for allegedly denying the plaintiff's requests for medication after the surgery. The plaintiff may proceed against Bresser and J. Lewis for allegedly

7

delaying the plaintiff's urgent medical appointments after he experienced complications following the first hernia surgery.

The plaintiff may *not* proceed against Nurse Randal. The plaintiff alleges that when he saw Randal on September 2, 2024 for complaints of groin pain, Randal told him to keep working out because he had lost weight. Although the plaintiff subsequently experienced worse pain and learned that he had a hernia, the plaintiff has not alleged that Randal knew that he had a hernia or otherwise disregarded the plaintiff's pain. The plaintiff has not stated a plausible claim that Randal acted with deliberate indifference.

The plaintiff may not proceed against CO Chase for allegedly telling the plaintiff and Kruse, when Kruse said the plaintiff should wear something tight, that the plaintiff's underwear would apply the necessary pressure after the hernia surgery,. The plaintiff's allegation against Chase does not allow for an inference that Chase disregarded the plaintiff's medical condition. Rather, it appears that Chase thought the plaintiff's underwear would be tight enough after his hernia surgery. Based on Chase's comment, Kruse allegedly did not advise Kettle Moraine staff that the plaintiff should wear something tight after the surgery. Based on the plaintiff's allegations, Chase and Kruse both thought that the plaintiff's underwear would apply the necessary pressure after surgery. This appears to have been wrong because at the plaintiff's follow-up appointment with Kruse twenty days after surgery, she requested compression shorts or a jockstrap for the plaintiff. But being incorrect does not rise to the

level of a constitutional violation. The plaintiff has not stated an Eighth Amendment claim against Chase or Kruse.

The plaintiff may not proceed on a claim against Schneider or Glinieki for falsely telling the plaintiff that the jockstrap they received on order for the plaintiff, which was too small, was the only jockstrap they had. Nor may the plaintiff proceed against Schwaller or Meinberg for allegedly altering the jockstrap to try to make it fit. The plaintiff alleges that he received a hernia belt on May 29, 2025, which was twenty-two days after his surgery. The next month, he allegedly asked the HSU why he had not yet received a jockstrap, and Klein replied that it was on order. The plaintiff states that on July 29, 2025, he received a jockstrap, but that it was too small, and Schneider and Gliniecki said that was the only size they had. It is not clear whether these defendants meant that it was the only size the *vendor* had or the only size the *jail* had. Either way, the plaintiff has not alleged that they lied about not having the correct size, and Schwaller and Meinberg allegedly altered the too-small jockstrap to try to make it fit. The plaintiff alleges that he received a different jockstrap on October 17, 2025. These allegations do not state a plausible claim that Schneider, Glinieki, Schwaller or Meinberg acted with deliberate indifference.

Finally, the plaintiff may not proceed against Warden Tassler for allegedly referring the plaintiff to the chain of command. The plaintiff does not say what specifically he wrote to Tassler or when he wrote to her. Assuming he wrote to Tassler about issues regarding medical care for his hernia, Tassler

9

reasonably referred the plaintiff to staff members who could directly address his issues. The plaintiff has not stated a claim against Tassler.

### III.    Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Randal, Chase, Kruse, Meinberg, Tassler, Schneider, Glinieki and Schwaller.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Barry Daughtry, Randal Geveau, J. Lewis and Jennifer Bresser. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$339.46** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

10

The court will send a copy of this order to the Warden at Dodge Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

11

or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 6th day of April, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

12